# In the United States Court of Appeals for the Federal Circuit

## AUTOALERT, INC.,

*Plaintiff–Appellee,*

*v.*

## DEALERSOCKET, INC.,

*Defendant–Appellant.*

---

### APPELLANT'S OPENING BRIEF

---

Appeal No. 14-1560

From an Order entered on June 17, 2014 by
Hon. S. James Otero, District Judge
United States District Court for the Central District of California
Case No. 8:13-cv-657-SJO-JPR

---

Sterling A. Brennan
L. Rex Sears
MASCHOFF BRENNAN LAYCOCK
GILMORE ISRAELSEN & WRIGHT PLLC

| | |
|---|---|
| 20 Pacifica, Suite 1130 | 201 South Main Street, Suite 600 |
| Irvine, California 92618 & | Salt Lake City, Utah 84111 |
| (949) 202-1900 Telephone | (435) 252-1360 Telephone |
| (949) 453-1104 Facsimile | (435) 252-1361 Facsimile |

Attorneys for DEALERSOCKET, INC.

**Form 9**

FORM 9.  Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

AutoAlert, Inc. _____ v. DealerSocket, Inc. _____

No. 14-1560 ____

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
appellant _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.    The full name of every party or amicus represented by me is:

DealerSocket, Inc.

---

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

DealerSocket, Inc.

---

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Ousland Holdings

---

4. ☑  The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Sterling A. Brennan, L. Rex Sears, Tyson K. Hottinger of the law firm Maschoff Brennan

---

July 8, 2014 _____
Date

/s/ Sterling A. Brennan _____
Signature of counsel

Sterling A. Brennan _____
Printed name of counsel

Please Note: All questions must be answered
cc: Cathy Nickol - cnickol@mabr.com

124

# TABLE OF CONTENTS

Page

I.     INTRODUCTION .................................................................... 1

II.    RELATED CASES STATEMENT ..................................... 2

III.   JURISDICTIONAL STATEMENT .................................... 2

IV.    STATEMENT OF ISSUE PRESENTED ......................... 3

V.     STATEMENT OF THE CASE ........................................... 4

       A.   Long after Learning of DealerSocket and its Accused
            Service, AutoAlert Files and Eventually Serves its
            Complaint, then Finally Prosecutes an Unsuccessful
            Motion for Preliminary Injunction ................................. 4

       B.   Once AutoAlert Identifies (Too Many) Asserted Claims,
            DealerSocket Commences CBM Proceedings ................ 5

       C.   DealerSocket Moves to Stay, and the District Court
            Rules ........................................................................... 8

       D.   After *Alice* Issues, the District Court Temporarily Stays
            Discovery while it Considers DealerSocket's Application
            for Further Relief ....................................................... 10

VI.    STATEMENT OF FACTS .................................................. 12

       A.   Simplification of Issues and Streamlining of Trial ........ 12

       B.   Trial Setting and Status of Discovery .......................... 14

       C.   Prejudice and Tactical Advantage ............................... 16

       D.   Reducing the Burden of Litigation .............................. 18

VII.   SUMMARY OF ARGUMENT .......................................... 19

VIII.  STANDARD OF REVIEW ............................................... 23

IX.   ARGUMENT ........................................................................25

    A.   The Statutory Factors Favor Stay ..............................25

        1.   A Stay Will Simplify Issues and Streamline Trial ........26

            a.   *Alice* Renders the PTAB's Institution of Trial Virtually Certain.........................................................29

            b.   As Long as the PTAB Institutes on *Any* Ground, a Stay Will Simplify Issues and Streamline Trial....36

        2.   Although the District Court Had Set a Trial Date, Discovery Was (and Is) Nowhere Near Complete ..........39

        3.   A Stay Will Not Unduly Prejudice AutoAlert or Give DealerSocket any Tactical Advantage....................43

        4.   A Stay Will Reduce Burdens on the Parties and the District Court.................................................................45

    B.   The District Court Improperly Relied on Non-Statutory Considerations........................................................................49

        1.   Whether the District Court Can Decide the Same Issues Is Not Relevant ........................................................50

        2.   The District Court Improperly Prioritized Speed over Efficiency ....................................................................51

        3.   The Sunk Costs Considered by the District Court Are Not Part of the Statutory Calculus ...........................53

        4.   The AIA Did Not Authorize the District Court to Force Settlement by Denying a Stay................................53

X.   CONCLUSION...................................................................................56

ADDENDUM ..........................................................................................57

PROOF OF SERVICE .........................................................................76

CERTIFICATE OF COMPLIANCE ...........................................77

# TABLE OF CITATIONS

Page(s)

## Cases

*Accenture Global Services, GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................ 34

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
   No. 13–298, 2014 WL 2765283,
   573 U.S. __ (U.S. June 19, 2014) ..................................................... passim

*Capital Dynamics AG v. Cambridge Associates, LLC*,
   No. 13 Civ. 7766 KBF, 2014 WL 1694710 (S.D.N.Y. Apr. 1, 2014) .... 29

*Credit Acceptance Corp. v. Westlake Services, LLC*,
   No. CV 13-01523 SJO (MRNx),
   2013 WL 7144391 (C.D. Cal. Dec. 30, 2013) ....................................... 28

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ............................................................. 34

*Fresenius USA, Inc. v. Baxter International, Inc.*,
   721 F.3d 1330 (Fed. Cir. 2013) ...................................................... 26, 37

*Hoganas AB v. Dresser Indus., Inc.*,
   9 F.3d 948 (Fed. Cir. 1993) ................................................................. 14

*In re Grams*,
   888 F.2d 835 (Fed. Cir. 1989) ............................................................. 34

*In re Venner*
   262 F.2d 91 (C.C.P.A. 1958) ................................................................. 36

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
   566 U.S. __, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012) ....................... 30

*Procter & Gamble Co. v. Kraft Foods Global, Inc.*,
   549 F.3d 842 (Fed. Cir. 2008) ............................................................... 5

*SiRF Tech., Inc. v. International Trade Commission*
    601 F.3d 1319 (Fed. Cir. 2010) ............................................... 36

*Textron Innovations Inc. v. Toro Co.*,
    No. 05-486-GMS, 2007 WL 7772169 (D. Del. Apr. 25, 2007) ........ 41, 53

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
    No. 2014-1232, slip op. (Fed. Cir. July 10, 2014) ......................... passim

## <u>Statutes</u>
28 U.S.C. § 1292 ................................................................................ 3

28 U.S.C. § 1338 ................................................................................ 2

35 U.S.C. § 101 .......................................................... 4, 13, 18, 30

35 U.S.C. § 103 .......................................................... 13, 18, 35

35 U.S.C. § 112 .......................................................... 18, 32

35 U.S.C. § 282 ................................................................................ 37

35 U.S.C. § 326 ................................................................................ 47

AIA § 18 ...................................................................................... passim

## <u>Rules</u>
Federal Rule of Appellate Procedure 4 .................................... 3, 4

Federal Rule of Civil Procedure 1 .......................................... 52

Office Patent Trial Practice Guide,
    77 Fed. Reg. 48755 (Aug. 14, 2012) .................................... 5, 41

## <u>Other Authorities</u>
157 CONG. REC. S1053 (daily ed. March 1, 2011) .......................... 20, 23

157 CONG. REC. S1071 (daily ed. March 1, 2011) ...................................... 23

157 CONG. REC. S1072 (daily ed. March 1, 2011) ...................................... 23

157 CONG. REC. S1363 (daily ed. Mar. 8, 2011) ............................... passim

157 CONG. REC. S1364 (daily ed. Mar. 8, 2011) ............................... passim

157 CONG. REC. S1367 (daily ed. Mar. 8, 2011) ...................................... 54

## ADDENDUM CONTENTS

Leahy–Smith America Invents Act § 18, Pub. L. No. 112-29, 125 Stat. 284, 329–331 (2011)

Civil Minutes – General (setting forth appealed order, as entered on June 17, 2014)

Excerpts from the Reporter's Transcript of *Markman* Hearing for June 2, 2014 (setting forth findings and conclusions)

# I. INTRODUCTION

DealerSocket, Inc., defendant and appellant, initiated covered business method patent review ("CBM") proceedings before the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office ("PTO") by petitioning for review of the patents in suit under the transitional program established pursuant to Section 18 of the Leahy–Smith America Invents Act ("AIA"), Pub. L. No. 112-29, 125 Stat. 284, 329–331 (2011). DealerSocket moved the district court to stay the civil action until the administrative proceedings initiated by the CBM petitions conclude, as contemplated and authorized by subsection (b)(1) of that statute. But the district court denied DealerSocket's motion. DealerSocket appeals that denial, as of right, under subsection (b)(2).

Congress intended "denial of a stay pending [CBM] review" to be "an extraordinary and extremely rare circumstance." *See* 157 CONG. REC. S1364 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer). This Court should reverse the district court's order denying DealerSocket's motion to stay because that order is premised on considerations foreign to the statutory framework that should have been applied; and when

the statutory factors are properly assessed and weighed, it becomes apparent that no "extraordinary" or "rare circumstance" justifies the district court's order.

## II.    RELATED CASES STATEMENT

No appeal in or from the action below was previously before this or any other appellate court.  So far as undersigned counsel is aware, no cases pending in this or any other court will directly affect or be directly affected by this Court's decision in this appeal.

## III.    JURISDICTIONAL STATEMENT

The district court has original jurisdiction under 28 U.S.C. § 1338(a) because plaintiff and appellee AutoAlert, Inc. commenced this action by suing DealerSocket for alleged infringement of five patents it claims to own.

Appeal lies as of right from the district court's order denying DealerSocket's motion to stay under AIA § 18(b)(2), which expressly authorizes "an immediate interlocutory appeal" from that order.  This Court has appellate jurisdiction under AIA § 18(b)(2), which directs "[t]he United States Court of Appeals for the Federal Circuit [to] review the district court's decision to ensure consistent application of

established precedent," *see VirtualAgility Inc. v. Salesforce.com, Inc.*, No. 2014-1232, slip op., p. 4 (Fed. Cir. July 10, 2014)[1]; and failing that, 28 U.S.C. § 1292(c)(1).

The district court announced the appealed order from the bench on June 2, 2014, A2478, but the docket entry required by Federal Rule of Appellate Procedure ("FRAP") 4(a)(7)(i) was not entered until June 17, 2014, A25. (The document through which the disposition was entered has a banner indicating "Filed 06/02/14," A2, but as the district court's docket reflects, the document was not *entered* until June 17, 2014, A25—which also is the date on which DealerSocket's counsel first learned of it.) DealerSocket filed its notice of appeal on June 18, 2014, A27, well within the 30 days allowed by FRAP 4(a)(1)(A).

## IV.    STATEMENT OF ISSUE PRESENTED

Whether the district court erred by *denying* a stay, based on factors not enumerated in AIA § 18(b)(1), rather than *granting* a stay, as counseled by the statutory factors.

---

[1] Although *VirtualAgility* is precedential, because it is presently available only as a slip opinion it is reproduced for convenient reference in the appendix, starting at A2502.

# V.   STATEMENT OF THE CASE

A.   **Long after Learning of DealerSocket and its Accused Service, AutoAlert Files and Eventually Serves its Complaint, then Finally Prosecutes an Unsuccessful Motion for Preliminary Injunction**

AutoAlert has "long been aware" of DealerSocket, as "an industry leader that provides an automotive Customer Relationship Management ('CRM') system to auto dealers"; and AutoAlert first became aware that DealerSocket intended to launch its accused instrumentality, "as an optional feature to its CRM product," in "early 2012." A959–60.  But AutoAlert waited until April 25, 2013 to file a complaint, A6; and it waited out 99 of the 120 days allowed by Federal Rule of Civil Procedure ("FRCP") 4(m)—until August 2, 2013—before serving that complaint, A7.  Then it waited another six weeks, until September 13, 2013, before filing a motion for preliminary injunction ("PI").  A7.

On February 3, 2014, the district court denied AutoAlert's PI motion because AutoAlert "ha[d] not shown that it is more likely than not to successfully demonstrate that the asserted claims are patent eligible" under 35 U.S.C. § 101.  A2113–17.  The district court concluded its patentability analysis as follows: "More guidance—either from the

Supreme Court in *Alice Corp.* or from the Federal Circuit—could change this analysis." A2117. As will be seen, the Supreme Court's then-anticipated, now-issued (and unanimous) decision in *Alice Corp. Pty. Ltd. v. CLS Bank International*, No. 13–298, 2014 WL 2765283, 573 U.S. __ (U.S. June 19, 2014) figures into the order from which this appeal is taken, as well.

### B.  Once AutoAlert Identifies (Too Many) Asserted Claims, DealerSocket Commences CBM Proceedings

DealerSocket understood that it could not seek a stay while AutoAlert's PI motion was pending. *See Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 847 (Fed. Cir. 2008). Indeed DealerSocket could not *effectively* pursue CBM review at all, with or without a stay, until it knew which claims to go after. A CBM proceeding begins "with the filing of a petition *that identifies all of the claims challenged.*" Office Patent Trial Practice Guide, 77 Fed. Reg. 48755, 48757 (Aug. 14, 2012) (emphasis added). Between them, AutoAlert's patents have 95 claims, but only two were asserted in the PI motion. Petitioning for CBM review of all 95 would have made little sense—given the infeasibility of trying all 95 claims and, thus, the near certainty that a much smaller set of claims would ultimately be at issue

in the litigation; but filing a petition limited to the two claims in the PI motion would have been inefficacious, given the near certainty that others would be asserted.

When the district court denied AutoAlert's PI motion, it set an aggressive schedule that required AutoAlert to provide its "preliminary infringement contentions" by February 10, 2014 and set trial for December 2, 2014 (subject to this proviso: "the Court will not try this case until the Supreme Court renders its ruling [in *Alice*]"). A2107–08. Ignoring the district court's admonition that 40 claims would be too many, A2162, AutoAlert asserted *51 claims* altogether, including the two that had been identified in the PI motion. Despite the burden of an aggressive schedule set by the district court, compounded by AutoAlert's assertion of an unreasonable number of claims, over the next few months DealerSocket diligently prepared CBM petitions targeting each of the five patents and all 51 claims "preliminarily" asserted by AutoAlert.

DealerSocket filed the first of its petitions on May 19, 2014. That same day, DealerSocket filed with the district court its motion to stay. A23. In accordance with the district court's local rules, DealerSocket

set the motion for hearing on June 16, 2014, and in the motion DealerSocket promised that it would file petitions directed to each of the other four patents in suit by that hearing date. A2180. Over the course of the next few weeks, DealerSocket fulfilled that commitment by preparing and filing CBM petitions against each of the other four patents in suit. DealerSocket filed the last of its petitions on June 13, 2014. The trial numbers assigned by the PTO to DealerSocket's petitions, and the corresponding numbers for AutoAlert's patents, are CBM2014-00132 (U.S. Patent No. 8,095,461), CBM2014-00139 (U.S. Patent No. 8,396,791), CBM2014-00142 (U.S. Patent No. 7,827,099), CBM2014-00146 (U.S. Patent No. 8,086,529), and CBM2014-00147 (U.S. Patent No. 8,005,752).

DealerSocket ultimately obtained a further order directing AutoAlert to narrow its claims, first to 20 and then to 10 claims; and now, only 10 claims are at issue. A2173. The iterative narrowing from 95 to 51 to 20 to 10 claims shows that DealerSocket was justified in its reluctance to file petitions attacking all 95. But still, it is unfortunate that AutoAlert dragged the process out to the point where the CBM proceedings still are broader than they really needed to be.

## C.    DealerSocket Moves to Stay, and the District Court Rules

As mentioned above, DealerSocket filed its motion to stay on May 19, 2014, and set it for hearing on June 16, 2014.  A23.  The district court *sua sponte* advanced the briefing and hearing on DealerSocket's motion to stay, so that the motion was heard on June 2, 2014, along with certain claim construction issues.  A23.  At the conclusion of that hearing, the district court announced that DealerSocket's motion was denied, A2475; but as mentioned above, that order was not docketed until June 17, 2014, A25.  The next day, DealerSocket took this appeal.  A27.

The AIA instructs courts to consider four factors when deciding "whether to enter a stay," viz.:

> (A)  whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;
>
> (B)  whether discovery is complete and whether a trial date has been set;
>
> (C)  whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and
>
> (D)  whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1).  As entered, the district court's order reads:

> The Court considers the following factors: whether the stay will simplify the issues of the case; the stage of discovery and dates that are set; whether there is any prejudice to the non-moving party; and whether the stay will reduce the burden of litigation on the parties or the Court.   Having considered the argument presented by counsel, as well as the preceding factors, the Court denies without prejudice Defendant's Motion to Stay Case pending the Supreme Court's decision in *Alice Corp. v. CLS Bank*.

A2.  That is, the order recites that the district court "considered" the four statutory factors, but it articulates no findings or conclusions regarding any of them.  Underlying analysis must instead be sought in the transcript of the June 2, 2014 hearing.

As that transcript reflects, during colloquy with DealerSocket's counsel, the district court addressed the first factor as follows:

> Whether the stay will simplify the issues, I'm not sure that the litigation in this court will end assuming best-case scenario for your client [i.e., DealerSocket].   It may.

A2469.  Regarding the second factor, the district court stated only: "The second factor is a trial date has been set."  A2470.  As for the third factor, the district court made no finding of tactical advantage to DealerSocket; but it did rely on its earlier PI ruling to find prejudice to AutoAlert, as follows:

9

> So in the order that the Court issued regarding the preliminary injunction, the Court concluded that the parties are direct competitors and that the plaintiff made a sufficient showing that it would suffer irreparable harm if the defendant was infringing. So this appears to weigh in favor of not granting the request.

A2467. The transcript does not record any analysis directed to the fourth factor, at least not expressly—but as shown below, it does report findings that should have led to a determination that the fourth factor heavily favors a stay.

### D. After *Alice* Issues, the District Court Temporarily Stays Discovery while it Considers DealerSocket's Application for Further Relief

The appealed order, quoted more fully above, "denies without prejudice [DealerSocket's] Motion to Stay Case pending the Supreme Court's decision in *Alice Corp. v. CLS Bank*." The district court's bench ruling similarly left the door open to some unspecified further action following the Supreme Court's ruling in *Alice*:

> The request to stay the proceedings is denied without prejudice. And the next major event will be whether the Supreme Court issues its opinion [in *Alice*].

A2478.

*Alice* issued on Thursday, June 19, 2014. Partially in view of the district court's prior statements about that ruling, the following Tuesday, June 24, 2014, DealerSocket applied to the district court, using the district court's expedited "ex parte" application procedure, to: (1) reconsider its earlier order denying DealerSocket's motion to stay, pursuant to AIA § 18(b)(1); or (2) stay proceedings pending disposition of this appeal; or (3) stay discovery in deference to expedited summary judgment proceedings on patentability, in view of *Alice*. A27. A week later, DealerSocket applied to this Court for a stay pending appeal.

On July 3, 2014, this Court denied DealerSocket's motion for interlocutory stay and ordered expedited briefing of this appeal, while the district court issued the following order on DealerSocket's application:

> The Court temporarily stays discovery pending its issuance of an order on Defendant's Application. Discovery is stayed until **Friday, July 18, 2014**.

A2501. As of the filing of this brief (filed according to the schedule set by this Court's order dated July 3, 2014), the anticipated "order on Defendant's Application" has not yet issued.

# VI.   STATEMENT OF FACTS

The AIA instructs courts to consider four factors when deciding "whether to enter a stay," viz.:

(A)  whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B)  whether discovery is complete and whether a trial date has been set;

(C)  whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D)  whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

AIA § 18(b)(1).  Facts relevant to those factors are summarized below, factor by factor.

## A.   Simplification of Issues and Streamlining of Trial

AutoAlert identified 51 claims in the infringement contentions it served on February 10, 2014, in accordance with the district court's February 3, 2014 scheduling order.  *See* A2107.  Of those, *all 51* are at issue in DealerSocket's petitions.  Thus the CBM petitions have the potential to end litigation in the district court altogether.[2]

---

[2] AutoAlert is trying to add an additional dependent claim (claim no. 19 of U.S. Patent No. 7,827,099 ["'099 patent"]) to its contentions.

One of the grounds common to all of DealerSocket's petitions is lack of patentable subject matter under 35 U.S.C. § 101. As noted above, the district court already preliminarily adjudicated that issue in DealerSocket's favor, when it denied AutoAlert's PI motion. *See* A2113–17. As shown below, that preliminary determination is now all but certain to become final.

Other grounds that DealerSocket has presented in its petitions are that the asserted claims recite nothing more than the computerized automation of prior art processes, which is obvious under § 103; and that "may affect whether it is favorable," which runs throughout the asserted claims, is indefinite. Apparently reacting to caselaw

---

DealerSocket will resist that unless, with AutoAlert's cooperation and consent, the PTAB permits DealerSocket to amend its '099 patent petition to add that claim. Because the limitation that claim adds does not differ materially from the limitation added by dependent claims 7 and 15 of U.S. Patent No. 8,086,529, dependent claim 12 of U.S. Patent No. 8,086,529, dependent claim 9 of U.S. Patent No. 8,095,461, and dependent claim 7 of U.S. Patent No. 8,396,791, each of which has already been put at issue by DealerSocket's petitions directed to those patents, its introduction would not change the basic validity calculus. However, this attempted shift by AutoAlert illustrates a basic dilemma that DealerSocket has faced from the start: wait until the asserted patent claims are finally settled, by which time CBM petitions might be deemed too late to justify a stay; or file early CBM petitions that AutoAlert could try to evade—as, for example, by increasing its asserted claims from two to 51, if DealerSocket had filed based on the PI motion; or even now, by trying to change the claims it asserts.

developments that post-date the PTO's initial allowance of the asserted claims of AutoAlert's patents, on November 20, 2013 the same patent examiner who allowed those claims issued final rejections on each of those grounds in U.S. Patent Application No. 13/831,015,[3] a descendant of the patents in suit.

### B.    Trial Setting and Status of Discovery

The district court has set a December 2, 2014 trial date.  A2108. Whether that setting will survive the district court's July 3, 2014 order staying discovery or will survive the further order it anticipates entering by July 18, 2014 is not yet known.

The district court also set fact and expert discovery cutoffs for July 14 and September 22, 2014, respectively.  A2108.  The July 14, 2014 fact discovery cutoff cannot survive the district court's July 3, 2014 order, which stays discovery until after that cutoff passes.

---

[3] As this Court has recognized, it is "appropriate to take judicial notice of PTO correspondence which is part of the public record," whether or not it is "part of the record on appeal."  *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 n. 27 (Fed. Cir. 1993).  In any event, this particular office action was presented and argued to the district court, as well.  *See* A2208, A2211.

As of this writing, 12 percipient witness depositions have been noticed and not yet taken,[4] and no expert discovery has been conducted. Between May 19, 2014, when DealerSocket filed its motion to stay, and July 3, when the district court temporarily stayed discovery:

- AutoAlert served one set of interrogatories, with 10 separate requests, and two sets of request for production, with 26 requests;

- DealerSocket served one set of interrogatories, with nine requests, and one set of requests for production, with 28 requests;

- AutoAlert took three third-party depositions[5] and deposed DealerSocket's founders (Jonathan Ord and Brad Perry); and

---

[4] The noticed but not yet taken depositions are of Jeffrey S. Cotton, AutoAlert's named inventor; William Bunker, AutoAlert's lead patent prosecution attorney; Darren VanCleave, Joshua Fichter, and Ford Motor Credit Corp., third-party prior art witnesses; Fletcher Jones Motorcars, a third-party on-sale-bar witness; HGGC, LLC and The Presidio Group LLC, third-party investors in AutoAlert; Wayne Hammond, a DealerSocket employee; AutoAlert, on liability topics; AutoAlert, on damages topics; and DealerSocket, on various topics.
[5] Brian Allan and David Krier, third-party prior art witnesses, and Brad Codd, a third-party inventorship witness.

- AutoAlert served document subpoenas on 18 third parties.[6]

As shown below, not only the 12 untaken percipient depositions and the not-yet-commenced expert discovery, but also all the discovery conducted after DealerSocket filed its motion weigh in favor of a stay.

## C.    Prejudice and Tactical Advantage

The district court did not find that DealerSocket might obtain some tactical advantage from a stay.  But AutoAlert argued that it will because a stay here would likely result in a different lawsuit that AutoAlert commenced against a different defendant, which is pending before a different district judge, going to trial first.  That other action is *AutoAlert, Inc. v. Dominion Dealer Solutions, LLC*, No. 8:12-cv-1661-JST-JPR (C.D. Cal.).  The fact most pertinent to this argument is that

---

[6] TXVT Limited Partnership dba Trophy Nissan, TODVT Limited Partnership dba Toyota of Dallas, MVVT Motors, Inc. dba South County Lexus at Mission Viejo, GPVN Motors Limited Partnership dba Texas Nissan of Grapevine and Texas Nissan, DBVT Motors, Inc. dba Delray Honda, CAVT, LLC dba Cerritos Nissan, BFVT Motors, Inc. dba Grapevine Ford, Vandergriff Automotive II, L.P. dba Vandergriff Toyota, Luke Motor Company II, L.P. dba Vandergriff Honda, Cassie Broemmer, Vista Equity Partners, LLC, RedBumper, LLC, Loop Management, LLC, J&L Marketing, Inc., HCD Software, LLC, Data Software Services, LLC, Clark King Jr., King Global Enterprises, LLC, and AutomotiveMastermind, LLC.

AutoAlert itself set that priority by suing Dominion on October 1, 2012—more than six months before it sued DealerSocket.  A959.

As for undue prejudice, AutoAlert and the district court both relied primarily on the district court's determination, in connection with AutoAlert's unsuccessful PI motion, that AutoAlert would suffer irreparable harm if an injunction did not issue.  The *facts* pertinent to that determination are that AutoAlert and DealerSocket are competitors, to a limited extent (some customers use both); and that AutoAlert delayed moving for preliminary injunction for at least 15 months.  *See* A7, A959–60.  Otherwise, what AutoAlert presented in support of its PI motion is a parade of horribles that has not been realized, notwithstanding the absence of preliminary injunctive relief— as evidenced by the fact that AutoAlert's principals were recently able to sell a controlling interest in their startup, in a transaction that a *Wall Street Journal* source suggests had a transaction enterprise value approaching $300 million.  *See* <http://blogs.wsj.com/privateequity /2014/04/01/hggc-invests-in-cloud-services-provider-autoalert/> (accessed July 7, 2014).

## D.    Reducing the Burden of Litigation

As noted above, each of the 51 claims asserted by AutoAlert is targeted by one of DealerSocket's CBM petitions.  With regard to all those claims, review and cancelation are sought for lack of patentable subject matter, under 35 U.S.C. § 101, and on various written description and enablement grounds, under 35 U.S.C. § 112.  Two petitions also present obviousness grounds, under 35 U.S.C. § 103.[7] With regard to just those issues, and patentable subject matter in particular, the district court acknowledged during the June 2 hearing that a stay would greatly ease its workload.  As the district court pointed out: it already has "other matters to handle, 300 litigations"; "[i]t would be less work" for the district court if the case were stayed; and if the issues presented by DealerSocket's CBM petitions were presented to the district court through summary judgment motions,

---

[7] Other, follow-on petitions may present similar § 103 grounds for reviewing and canceling claims in the other three patents, depending on whether and how the § 112 issues are sorted out.  DealerSocket has not yet sought review of those other patents under § 103 because their claims are so poorly drafted that it seems impossible to read them on anything, be it the prior art or the accused instrumentality.

"there's going to be a lot of additional work [for the district court] to do to gear up for that hearing." A2478.

In addition to the invalidity contentions that DealerSocket is pursuing in its CBM petitions, in the district court action DealerSocket also is pursuing an on-sale bar and improper inventorship (which DealerSocket would have pursued in CBM petitions, if it could[8]), in addition to noninfringement and unenforceability defenses; and damages are also being litigated. DealerSocket's petitions could eliminate litigation of those issues entirely—but only if district court proceedings are stayed until the PTAB finishes its work.

## VII.  SUMMARY  OF  ARGUMENT

*VirtualAgility* is the first appeal pursuant to AIA § 18(b)(2) that this Court has decided. In that case, a district court had held that:

- The first factor (simplifying issues and streamlining trial) was neutral, *VirtualAgility*, slip op. at 6;

- The second factor (timing) favored stay, *id.* at 15;

- The third factor (undue prejudice) "weighed heavily against a stay," *id.* at 19; and

---

[8] DealerSocket would have pursued those grounds in its CBM petitions, as well, but the statute does not allow it. *See* AIA § 18(a)(1)(C).

- The fourth factor (reducing burdens) slightly favored stay, *id.* at 7.

This Court held each finding an abuse of discretion—and that the first, second, and fourth factors *strongly* favored stay, *id.* at 25, while the third factor weighed only slightly against a stay, *id.* Accordingly, this Court reversed. *Id.* at 26.[9]

Here, the district court:

- Determined that the first factor (simplifying issues and streamlining trial) "may" favor stay;

- Determined that the second factor weighs against stay, because a trial date has been set—but did not consider the status of discovery, as required by the statute, *see* AIA § 18(b)(1)(B);

---

[9] The *VirtualAgility* dissent complained that in so doing, the panel majority "effectively create[d] a rule that stays of district court litigation pending CBM review must always be granted" and "engrafted onto the statute" a "near automatic grant of litigation stays." *VirtualAgility*, slip op. at 3, 4 (Newman, J., dissenting). Whether or not the dissent accurately characterized the majority opinion, a "near automatic grant of litigation stay" seems to be exactly what the drafters of the statute had in mind. *See* 157 CONG. REC. S1053 ("Since the entire purpose of the transitional program at the PTO is to reduce the burden of litigation, it is nearly impossible to imagine a scenario in which a district court would not issue a stay.") (daily ed. March 1, 2011) (statement of Sen. Schumer).

- Determined that the third factor weighs against stay, based on the irreparable harm finding it made when it *denied* AutoAlert's PI motion; and

- Made no determination regarding the fourth factor.

As in *VirtualAgility*, so too here the district court erred.  The case-ending potential of DealerSocket's CBM petitions means the first and fourth factors *strongly* favor stay—and indeed the district court proceedings would be simplified and streamlined *somewhat* even if DealerSocket's petitions fall short of their full potential.  As for the second factor, the trial setting was (and is) more than offset by the amount of discovery yet to be done.  And although the competitive relationship between AutoAlert and DealerSocket counts against a stay, AutoAlert's own dilatory conduct weakens the force of that consideration.

Moreover the district court reached its conclusion primarily by improperly focusing on extra-statutory factors.  Specifically, the district court justified its denial of a stay primarily by insisting that:

(1)  it can decide the same issues, more quickly,

(2) it has already invested considerable judicial resources in the case, and

(3) by keeping the pressure up, *denying* a stay is more likely to facilitate settlement.

None of those considerations is relevant to the statutory calculus, which:

(1) prioritizes efficiency over speed,

(2) emphasizes prospective savings rather than sunk costs already incurred, and

(3) aims to eliminate, efficiently and conclusively, the economic drag of improperly issued business method patents—rather than entrenching them further by enhancing the patentees' bargaining position, their ability to extract forced settlements, with the club of added litigation costs.

Thus the reasoning that the district court employed in place of the statutory analysis is flawed.

Because the statutory factors counsel in favor of a stay, and because the district court's contrary conclusion was based on a

combination of extra-statutory factors and incomplete or otherwise mistaken application of the statutory factors, this Court should reverse.

## VIII. STANDARD OF REVIEW

The AIA authorizes this Court to review the district court's order *de novo*. AIA § 18(b)(2). *VirtualAgility* left open "the standard of review applicable to the ultimate stay decision [and] the individual factors." *VirtualAgility*, slip op. at 5. But the legislative history speaks directly to this point: according to one of the legislation's named sponsors, this Court "can and should" exercise its statutory authority to "review the district court's decision de novo . . . . unless there are unique circumstances . . . such as subsequent requests for an interlocutory appeal in the same case." 157 CONG. REC. S1364.[10]

---

[10] AutoAlert can be expected to argue here, as it did below, that Senator Schumer's exposition should be ignored. Section 18 of the AIA was part of the *Schumer*–Kyl amendment to the AIA, which was adopted into the managers' amendment put forward by ranking members of the Senate Judiciary Committee on March 1, 2011. *See* 157 CONG. REC. S1053, S1071–72 (daily ed. March 1, 2011) (statement of Sen. Schumer; text of Managers' Amendment). Because the statute was first introduced through a managers' amendment put forward after the bill was reported out of committee, it is not addressed in the committee's report. But after the amendment was put forward, Senator Schumer (and Senator Kyl) addressed the Senate, more than once, for the express purpose of explaining the intent behind the amendment and expectations as to how its provisions would be applied. Thus the

*VirtualAgility* nevertheless found resolution of the standard of review unnecessary "because [it] h[e]ld that, even under the abuse of discretion standard . . . the district court's decision to deny a stay pending the PTAB's review . . . under the CBM program must be reversed." *VirtualAgility*, slip op. at 5. The same holds true here: the district court abused its discretion, including by not making any findings on some of the statutory factors and by resting its decision on extra-statutory factors.

Even so, no "unique circumstances" justifying more deferential review are present, here. Although this Court can and should reverse, even if it reviews for abuse of discretion, nonetheless this Court should exercise its statutory authority to review the matter de novo, and thus consider the four statutory factors anew, without deference to the district court's determinations.

---

legislative history excerpts quoted and cited herein are not stray comments made during the heat of debate but rather considered expositions by the authors of the legislation, which reveal not only the authors' thinking but also, presumably, what motivated Congress to pass the bill into law.

# IX. ARGUMENT

DealerSocket begins by considering the statutory factors. Following that, DealerSocket addresses the extra-statutory findings and conclusions put forward by the district court to justify its ruling.

## A. The Statutory Factors Favor Stay

The CBM program "is designed to provide a cheaper, faster alternative to district court litigation over the validity of business-method patents," which "should be used instead of, rather than in addition to, civil litigation." 157 CONG. REC. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Schumer). "To that end," the statute not only "expressly authorizes a stay of litigation in relation to such proceedings," but also "places a very heavy thumb on the scale in favor of a stay being granted," *id.*, by adopting the "four-factor test" quoted above, *see* 157 CONG. REC. S1364. "It is congressional intent that a stay should only be denied in extremely rare instances." 157 CONG. REC. S1363. As shown below, this is not one of those "extremely rare instances" in which a stay should have been denied.

### 1.   A Stay Will Simplify Issues and Streamline Trial

The first of the four factors prescribed by the AIA is whether

granting or denying a stay "will simplify the issues in question and

streamline the trial."  AIA § 18 (b)(1)(A).  During colloquy with

DealerSocket's counsel, the district court opined:

> Whether the stay will simplify the issues, I'm not sure
> that the litigation in this court will end assuming best-
> case scenario for your client [i.e., DealerSocket].   It
> may.

A2469.  To the extent that constitutes a finding it is clearly erroneous

because the "best-case scenario" for DealerSocket, in the CBM

proceedings, is invalidation of every asserted claim, which obviously

would *greatly* simplify issues and indeed avoid trial altogether.  *See*

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1340 (Fed. Cir.

2013), *cert. denied*, 134 S. Ct. 2295 (2014) ("if the PTO confirms the

original claim in identical form, a suit based on that claim may

continue, but if the original claim is cancelled or amended to cure

invalidity, the patentee's cause of action is extinguished and the suit

fails").  Here, as in *VirtualAgility*, the district court erred and this

factor "weighs heavily in favor of granting the stay" because "CBM

review could dispose of the entire litigation: the ultimate simplification of issues." *VirtualAgility*, slip op. at 13.

The extent of simplification and streamlining that will (rather than could) be secured by a stay is at least partly a function of whether the PTAB institutes trial on DealerSocket's CBM petitions; and if so, upon which grounds. In *VirtualAgility*, those variables had been resolved because by the time the defendants' motion to stay was denied, the PTAB had already granted (in part) the CBM petition in favor of which stay was sought. *See VirtualAgility*, slip op. at 3. But the district court in that case nevertheless "performed its own evaluation of the bases upon which the PTAB granted the CBM petition." *Id.* at 6. On appeal, this Court held, "[t]he district court erred as a matter of law to the extent that it decided to 'review' the PTAB's determination that the claims . . . are more likely than not invalid." *Id.* at 11. "Congress clearly did not intend district courts to hold mini-trials reviewing the PTAB's [institution] decision." *Id.*

This case is different because here, the PTAB has not yet decided whether to institute trial on any of the grounds presented in DealerSocket's petitions. By itself that is no obstacle because "a motion

to stay could be granted even before the PTAB rules on a . . . petition." *VirtualAgility*, slip op. at 16.  But still, given that circumstance, some inquiry into the merits of the petitions might be proper—as a safeguard against the tactical abuse warned of by the *VirtualAgility* dissent, to which the stay procedure might be liable if defendants could secure stays by filing frivolous petitions.  *See VirtualAgility*, slip op. at 4 (Newman, J., dissenting).  Thus, e.g., in *Credit Acceptance Corp. v. Westlake Services, LLC*, No. CV 13-01523 SJO (MRNx), 2013 WL 7144391 (C.D. Cal. Dec. 30, 2013), the same district court whose order DealerSocket now appeals granted a different defendant's motion to stay based on a CBM petition on which the PTAB had not yet ruled— reasoning, "Plaintiff has not explained why the PTO would be unlikely to grant Westlake's petition." *Id.* at *4.  Accordingly, DealerSocket begins by showing that the PTAB is likely to institute trial on at least some of the grounds (notably ineligible subject matter) presented in its petitions.

DealerSocket then considers the potential for simplifying issues and streamlining trial, depending on whether the PTAB institutes trial on all, some, or none of the grounds it has presented.  If the PTAB

28

institutes trial on ineligible subject matter, that will reach *all* asserted claims, but institution of trial on other grounds might reach fewer than all asserted claims.  Still, as shown below, so long as the PTAB institutes trial on even one claim, a stay *will* simplify issues and streamline trial.

a. *Alice* Renders the PTAB's Institution of Trial Virtually Certain

As of July 10, 2014 the PTAB's grant rate in institution decisions is at least 75% (72 out of 95).[11]  *See* AIA Statistics available at <http://www.uspto.gov/ip/boards/bpai/stats/aia_statistics_07_10_2014. pdf> (accessed July 14, 2014).  Looking beyond the generally favorable environment, grounds presented by DealerSocket's petitions include

---

[11] *Capital Dynamics AG v. Cambridge Associates, LLC*, No. 13 Civ. 7766 KBF, 2014 WL 1694710, *1 (S.D.N.Y. Apr. 1, 2014), suggests the grant rate is even higher, once duplicative petitions (multiple petitions directed to the same patent) are filtered out.  DealerSocket's own canvass of the PTAB's CBM docket identified 96 institution decisions— 74 granting review, eight denying review on procedural grounds (the petitioner had sought declaratory relief before petitioning the PTAB), three denying review for failure to prove the patent at issue was a covered business method patent, and only eight denying review for failure to demonstrate unpatentability.  Here, there can be no dispute that AutoAlert's patents are directed to covered business methods, so the relevant metrics are: out of 82 institution decisions, 74 petitions (more than 90%) granted review and only eight (less than 10%) denied review.

lack of patentable subject matter, under 35 U.S.C. § 101. As noted above, the district court has already made a preliminary finding that the representative claims selected by AutoAlert as the basis for its preliminary injunction motion are probably directed to ineligible subject matter, subject to "[m]ore guidance . . . from the Supreme Court in *Alice Corp.*" *See* A2113–17. That further "guidance" has now come forth, and it confirms the district court's preliminary assessment.

*Alice* extended the two-step analysis applied in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. __, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012), to *all* patents, including business method patents such as those at issue here. In that analysis, "[f]irst, we determine whether the claims at issue are directed to one of those patent-ineligible concepts," i.e., "laws of nature, natural phenomena, and abstract ideas." *Alice*, 2014 WL 2765283 at *6. If so, then "[a]t *Mayo* step two, we must examine the elements of the claim to determine whether it contains an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application." *Id.* at *9 (internal citations and quotation marks omitted). At that step, unless "the claims . . . do more than simply instruct the practitioner to

implement the abstract idea . . . on a generic computer," they fail. *Id.* at

* 11.

AutoAlert's preliminary injunction motion was predicated on

independent claim 1 (and dependent claim 4) of U.S. Patent No.

8,396,791, which recites:

> A method comprising:
>
> by a computer system comprising computer hardware:
>
>> retrieving at least a portion of customer information, first financial terms that a customer has for a first vehicle, and first vehicle information;
>>
>> retrieving at least a portion of second vehicle information for a second vehicle and second financial terms available to the customer for the second vehicle;
>>
>> receiving a configuration request for replacing the first vehicle of the customer with a different vehicle;
>>
>> in response to the configuration request, retrieving current information associated with at least one of the customer information, the first financial terms that the customer has for the first vehicle, the first vehicle information, the second vehicle information, or the second financial terms available to the customer for the second vehicle;
>>
>> determining, by the computer system, whether the current retrieved information may affect whether it is favorable for the customer to replace a first vehicle and first financial terms with a second vehicle and second financial terms by at least:

> calculating one or more new payments based on an estimated equity value of the first vehicle derived from the first financial terms, and, based on the second financial terms; and

> determining if the one or more new payments satisfy at least a condition based at least in part on the first financial terms and the second financial terms, wherein the determination comprises calculating a difference between the one or more new payments and an existing periodic payment for the first vehicle, and determining whether the difference is less than or equal to a preset acceptable threshold value;

> generating a message if it is determined that the retrieved information may affect whether it is favorable for the customer to replace the first vehicle and first financial terms with the second vehicle and second financial terms; and

> transmitting the message to a dealer.

A2110–11. Or, purged of some of the § 112 transgressions (which constitute further cancelation grounds presented in DealerSocket's CBM petition) and irrelevant details:

> A method comprising:

> by a computer system comprising computer hardware:

>> retrieving . . . information . . .; . . .

>> receiving a configuration request . . .;

>> in response to the configuration request, retrieving current information . . .; . . .

> calculating one or more new payments . . .; and
>
> . . . calculating a difference between the one or more new payments and an existing periodic payment for the first vehicle, and determining whether the difference is less than or equal to a preset acceptable threshold value;
>
> generating a message if [the difference is less than or equal to a preset acceptable threshold value]; and
>
> transmitting the message to a dealer.

The district court performed the first *Alice* step when it recognized that this claim "centers on an abstract idea: the concept of comparing two periodic loan repayment amounts and determining whether one may be more favorable than the other"—something "[a] person can mentally" perform. A2114. Given that, the question becomes whether the claim recites further elements that "transform the claimed abstract idea into a patent-eligible application." *See Alice*, 2014 WL 2765283 at *9.

Beyond the abstract idea of calculating and comparing payment, the claim recites only retrieving information, receiving a request in response to which more information is retrieved, then generating and transmitting a message—and doing all of that "by a computer system."

33

The recitation that the method is performed "by a computer system" adds no patentable weight. *See Alice*, 2014 WL 2765283 at *11. The information retrieval that precedes and the message-generation-and-transmission that follows the computerized calculation-and-comparison are similarly insubstantial incidents of computerization, as is the receipt of a "configuration request." *See Accenture Global Services, GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1339 (Fed. Cir. 2013) (finding it "plain" that a claim reciting "determin[ing] a task to be completed" and "transmitting the determined task to a task assistant" is "ineligible for patent"); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) ("mere data-gathering steps cannot make an otherwise nonstatutory claim statutory") (internal bracketing and quotation marks removed; in part quoting *In re Grams*, 888 F.2d 835, 840 (Fed. Cir. 1989)). Thus there is nothing in the claim that transforms the abstract idea at its core into patentable subject matter.

Further confirming the near-certainty that the PTAB will institute on at least some of the grounds presented in DealerSocket's petitions: in addition to lack of patentable subject matter, DealerSocket's CBM petitions also show that the asserted claims recite

nothing more than the computerized automation of prior art processes, which is obvious under § 103; and that "may affect whether it is favorable," which runs throughout the asserted claims, is indefinite. As reported above, the same patent examiner who previously allowed the claims now asserted by AutoAlert has more recently—on November 20, 2013, and apparently in view of caselaw developments post-dating his initial allowance of the asserted claims—issued final rejections on each of those grounds in AutoAlert's related U.S. Patent Application No. 13/831,015. *See* A2208 ("it is vague and unclear as to what . . . 'may affect' actually means or encompasses"), A2210 ("the independent claim(s) are held to claim an abstract idea, and are therefore rejected as ineligible subject matter under 35 U.S.C. § 101"), A2211 ("Applicant is merely automating the known process of identifying and/or determining a financial transaction opportunity. Using a computer to automate a known process does not by itself impart nonobviousness . . .").

DealerSocket's petitions are also supported by materials that AutoAlert withheld from the PTO during examination of the patents in suit, including an early planning document document wherein the named "inventor" of AutoAlert's patents explains his then-prospective

"invention" as speeding up what he (and others) had already been doing, by automating it. *See* AA 1936–36. The admission that the "invention" is directed to a computer that "function[s] solely as an obvious mechanism for permitting a solution to be achieved more quickly, i.e., through the utilization of a computer for performing calculations," *SiRF Tech., Inc. v. ITC*, 601 F.3d 1319, 1333 (Fed. Cir. 2010), is critical because "it is not 'invention' to broadly provide a[n] . . . automatic means to replace manual activity which has accomplished the same result," *In re Venner*, 262 F.2d 91, 95 (C.C.P.A. 1958).

In light of the foregoing, it is difficult to imagine that the PTAB will not institute trial on at least *some* of the grounds presented by DealerSocket's petitions. And if the PTAB institutes at least on patentable subject matter then that will put *all* of the asserted claims in the dock.

### b. As Long as the PTAB Institutes on *Any* Ground, a Stay Will Simplify Issues and Streamline Trial

Assuming the PTAB institutes trial on at least one of the grounds asserted in DealerSocket's petitions, a stay *will* simplify issues and streamline trial. Any claims ultimately canceled (or amended to avoid cancelation) will be eliminated from contention in the district court,

36

altogether. *See Fresenius*, 721 F.3d at 1340. And even if the PTAB does not cancel claims, still DealerSocket will be precluded from pursuing in the district court any grounds on which the PTAB instituted trial. *See* AIA § 18 (a)(1)(D).

The *VirtualAgility* dissent took an all-or-nothing approach, insisting that "if [even] one claim were to survive CBM review, a stay would not simplify the litigation issues in this case" because "[t]here would still be full litigation of invalidity issues." *VirtualAgility*, slip op. at 8 (Newman, J., dissenting). But that analysis ignores the statutory command that "*[e]ach claim* of a patent . . . shall be presumed valid independently of the validity of other claims." *See* 35 U.S.C. § 282(a) (emphasis added). Representative claims may properly be utilized for various purposes, including certain validity inquiries, but unless AutoAlert concedes that all 51 of its asserted claims—and indeed all 95 claims of the patents in suit—stand or fall as one, it cannot shelter in the dissent's argument but must instead acknowledge that the PTAB's institution of trial on any grounds that reach any claims will result in less than "full litigation of invalidity issues" in the district court.

The more grounds on which the PTAB institutes trial, the greater the resultant simplification of issues and streamlining of trial in the district court; and if DealerSocket succeeds across the board (or at least with regard to patentable subject matter), there will be nothing left to litigate in the district court. But even if the PTAB institutes on less sweeping grounds, still the issues will be simplified and trial streamlined, to at least that extent.

As against all that, there is *no* scenario under which *denying* a stay will simplify issues or streamline the trial in the district court action. Even if the PTAB fails to institute trial on any ground asserted in DealerSocket's petitions, still denial of a stay still will not have simplified issues or streamlined trial in the district court. But if the district court's December 2, 2014 trial setting holds, denying a stay virtually guarantees that the district court action will be tried to judgment—both on the issues that are also presented by DealerSocket's CBM petitions and on the damages, noninfringement, unenforceability, and other invalidity contentions that are not—before the CBM proceedings conclude. And that will irretrievably foreclose any possibility of simplifying issues or streamlining trial in the district court

action, regardless of how the CBM proceedings turn out—which is contrary to the legislative intent that CBM review "be used instead of, rather than in addition to, civil litigation," 157 CONG. REC. S1363.

This factor unambiguously, and heavily, favors a stay.

### 2. Although the District Court Had Set a Trial Date, Discovery Was (and Is) Nowhere Near Complete

The second factor is "whether discovery is complete and whether a trial date has been set." AIA § 18 (b)(1)(B). "Generally, the time of the motion is the relevant time to measure the stage of litigation"— although "the stage of litigation, as of the date that CBM review [is] granted," may also be considered. *VirtualAgility*, slip op. at 18 & n. 6.

When the district court denied AutoAlert's preliminary injunction motion on February 3, it set trial for December 2, 2014. A2108. At the same time, the district court set July 14 and September 22, 2014 as the cutoffs for fact and expert discovery, respectively. *Id.* During the June 2, 2014 hearing on DealerSocket's motion to stay, the district court analyzed this factor as follows: "The second factor is a trial date has been set." A2470. Thus the district court abused any discretion it might have had by failing to take account of the incompleteness of discovery—both percipient and expert—as the statute requires.

39

As explained above, 12 percipient depositions have yet to be taken, and expert discovery has not even begun. After May 19, 2014, when DealerSocket filed its motion, the parties exchanged further interrogatories and requests for production, and AutoAlert took five depositions and served document subpoenas on 18 third parties. Because "the time of the motion is the relevant time to measure the stage of litigation," *VirtualAgility*, slip op. at 18, all of that post-motion discovery counts in favor of a stay, as well. Finally, the district court did not hold a claim construction hearing until June 2, 2014, A25, and it issued no claim construction ruling until June 18, 2014, A27—well after DealerSocket filed its motion. The incompleteness of claim construction proceedings as of the filing of DealerSocket's motion also favors a stay.

Advancing the stage of litigation determination to the present would not change the outcome because on July 3, 2014, the district court temporarily stayed discovery until July 18, 2014, A2501—by which date the district court apparently expects to enter a further order on DealerSocket's application to either reconsider the order from which this appeal is taken, or stay proceedings pending disposition of this appeal, or stay discovery in deference to expedited summary judgment

40

proceedings directed to patentability. That leaves 12 percipient depositions and all expert discovery undone, as of this writing, and will necessitate continuance of the July 14, 2014 fact discovery cutoff (and perhaps the September 22, 2014 expert discovery cutoff and even the December 2, 2014 trial setting, as well) if and when the temporary stay is lifted.

The roughly six-month gap between DealerSocket's May 19, 2014 motion to stay and the district court's December 2, 2014 trial setting also favored granting a stay, in two respects. First, the district court's trial setting was still far enough out not to counsel strongly against a stay. *See Textron Innovations Inc. v. Toro Co.*, No. 05-486-GMS, 2007 WL 7772169, at *1 (D. Del. Apr. 25, 2007) ("This action is not the first in which . . . the court has granted, a stay within a few months of a scheduled trial."). Second, trial was close enough that waiting to decide whether to stay would be improper. The PTAB will likely decide whether to institute a trial on DealerSocket's petitions, which were filed in May and June, sometime in November and December—i.e., close to or even just after the district court's trial setting. *See* Office Patent Trial Practice Guide, 77 Fed. Reg. 48755, 48757. As between waiting

41

until the PTAB decides whether to institute trial or granting a stay
"even before the PTAB rules on a . . . petition," *VirtualAgility*
"express[ed] no opinion on which is the better practice." *VirtualAgility*,
slip op. at 16. But *VirtualAgility* also counseled that a district court
that waits "should make every effort to expeditiously resolve the stay
motion after the PTAB has made its CBM review determination"
because "[t]o do otherwise would undermine the intent of Congress to
allow for stays to prevent unnecessary duplication of proceedings." *Id.*
at 17. That same reasoning requires prompt action here because
waiting until the PTAB decides whether to institute proceedings would
forfeit much of the potential for avoiding "unnecessary duplication of
proceedings."

The district court had indeed set a trial date by the time
DealerSocket filed its motion to stay. But the trial setting was still
more than six months away; and much percipient discovery, all expert
discovery, and claim construction remained undone as of that date.
Thus this factor favors stay, strongly (or at least somewhat)—and it
favors the imposition of a stay now, rather than after the PTAB renders
its institution decisions.

### 3.     A Stay Will Not Unduly Prejudice AutoAlert or Give DealerSocket any Tactical Advantage

The third factor is "whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party."  AIA § 18(b)(1)(C).  Here, the district court made no finding of tactical advantage to DealerSocket; but it did find prejudice to AutoAlert, as follows:

> So in the order that the Court issued regarding the preliminary injunction, the Court concluded that the parties are direct competitors and that the plaintiff made a sufficient showing that it would suffer irreparable harm if the defendant was infringing.  So this appears to weigh in favor of not granting the request.

A2467.  Were this an appeal from the district court's preliminary injunction ruling, its irreparable harm finding would be reviewed for abuse of discretion.  But AutoAlert never took *that* appeal; and in *this* appeal the district court's finding should be reviewed de novo.  *See* AIA § 18(b)(2) (authorizing de novo review); 157 CONG. REC. S1364 ("On appeal the Federal Circuit can and should review the district court's decision de novo. . . . unless there are unique circumstances militating against a de novo review, such as subsequent requests for an

43

interlocutory appeal in the same case.  A de novo review is central to the purpose of the interlocutory appeal provision . . .").

Moreover if the district court's PI order is treated as a fixed point then it also establishes the invalidity of at least some of AutoAlert's asserted claims.  According to that order, those claims are directed to unpatentable subject matter, absent contrary "guidance—either from the Supreme Court in *Alice Corp.* or from the Federal Circuit."  A2116–17.  The Supreme Court has since issued its decision in *Alice* and there is nothing in that decision to upset the district court's earlier analysis.  AutoAlert has no right to freedom from competition unless its patents are valid and infringed, which in light of the district court's preliminary injunction order and the Supreme Court's ruling in *Alice* is doubtful at best.

Looking to the facts, AutoAlert and DealerSocket are competitors—although a third-party AutoAlert deposed after the district court entered the appealed order testified that his dealership uses both parties' products, for different purposes, because each has its own strengths and weaknesses.  But there is no evidence that AutoAlert has actually suffered any price erosion or appreciable market share

losses in the 10 months that have passed since AutoAlert submitted the doomsday PI declarations prophesying them, on which the district court's PI determination was based. And AutoAlert's protestations of irreparable injury are undermined by its yearlong delay in bringing suit, followed by its further three-month and five-month delays in actually *serving* its complaint and filing its PI motion (measured from the date of suit). A6, A7, A959–60. In that same vein, even now AutoAlert could accelerate the PTAB's decision to institute trial on DealerSocket's petitions by accelerating its responses to those petitions, rather than taking the full three months it is allowed under the governing rules. But so far, at least, AutoAlert has not done so.

Here as in *VirtualAgility*, "the evidence of competition is weak and the patentee's delays in pursuing suit and seeking preliminary injunctive relief belie its claims that it will be unduly prejudiced by a stay," and thus "[a]t best, this factor weighs [only] slightly against a stay." *See VirtualAgility*, slip op. at 25.

### 4. A Stay Will Reduce Burdens on the Parties and the District Court

The fourth factor is "whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court." AIA

§ 18(b)(1)(D).  The legislative history calls out this factor, in particular, as integral to the pro-stay bias that Congress intentionally built into the statute.  *See* 157 CONG. REC. S1363–1364.

For much the same reasons set forth above, in connection with the first factor, this factor too favors a stay.  However "even when both factors point in the same direction" and "there is a great deal of overlap between the parties' arguments with regard to these two factors," "they continue to be separate, individual factors which must be weighed in the stay determination."  *VirtualAgility*, slip op. at 11.

Moreover, "[w]hile simplifying issues would as a general matter always reduce the burdens of litigation on the parties and the court, the reduced burden of litigation factor may implicate other considerations, such as . . . the court's docket."  *VirtualAgility*, slip op. at 14 n. 4.  In that regard, the district court's own observations during the hearing on DealerSocket's motion to stay tell the tale, at least in part:

> *The easiest thing for me to do is to grant the stay because it takes the case off my docket.  And it's not like I have -- I have other matters to handle, 300 litigations.*  So if I decide to deny the stay, it's going to be based on the factors that the Court must consider.  It would be easy for me to grant the stay.  *It would be less work*, and I respect the lawyers here.

46

> I think you've done -- both sides have done a very
> good job of representing your clients. And *I'm sure if*
> *these issues are presented to me, there's going to be a*
> *lot of additional work to do to gear up for that hearing.*

A2478 (emphasis added).

Without a stay, and assuming the district court action continues
to race ahead, there are three possibilities: the district court enters
judgment that the asserted claims are invalid before the PTAB
completes its work; the district court does not find invalidity, but the
PTAB does; or neither the district court nor the PTAB finds the claims
invalid. In any of those scenarios, the absence of a stay increases the
public and private burdens.

In the first case (district court adjudication of invalidity),
presumably the PTAB would have reached the same result—because
the PTAB can find invalidity based on a preponderance, AIA § 18 (a)(1),
35 U.S.C. § 326(e), while the district court might require clear and
convincing evidence. But the burden of getting there would have been
greater without a stay than it would have been with a stay because
damages, noninfringement, unenforceability, and additional invalidity
theories also would have been discovered, litigated, and tried—in

47

addition to the invalidity grounds presented in DealerSocket's CBM petitions.

In the second case, the rest of the district court discovery, pretrial motions, and trial that would have been had in the meantime would have been for naught. Staying the district court action would have prevented the waste.

Even in the third case, denying a stay increases the burden. Without a stay, the unsuccessful CBM petition grounds would have had to be litigated twice—once in the district court and again in the PTAB, because the district court's determination that DealerSocket had not proven invalidity by clear and convincing evidence would not control the PTAB's review or estop DealerSocket from pursuing the same grounds in the PTAB, with the benefit of a lower burden of proof. Conversely, even given the same pair of outcomes (no finding of invalidity, from either the PTAB or the district court), a stay would have reduced the burden because at least DealerSocket would have been precluded from raising in the district court action the grounds rejected by the PTAB. *See* AIA § 18 (1)(a)(D). Continued litigation of issues in the district

court is more likely to needlessly multiply the proceedings in which the parties must litigate the same issues.

The fundamental public policy of the AIA's CBM provisions is "to provide a cost-efficient alternative to litigation." 157 CONG. REC. S1364. DealerSocket's CBM petitions cannot serve their intended role as a cost-efficient *alternative* if litigation in the district court is allowed "to grind on while a reexamination is being conducted, forcing the parties to fight in two fora at the same time." *See id.*

### B. The District Court Improperly Relied on Non-Statutory Considerations

The district court's written order states that it "considered" the statutory factors, but as noted above it does not express any findings or conclusions with regard to any of them. The underlying analysis must be gleaned from the transcript of the oral argument on DealerSocket's motion to stay; but as shown below, that transcript reveals that the district court instead based its ruling primarily on extra-statutory factors. Specifically, the district court denied a stay based on (1) its ability to decide validity itself, rather than leave that to the PTAB, and the relative *speed* (rather than the *efficiency*) with which that decision could be rendered in the underlying civil action; (2) the judicial

49

resources already expended, rather than those that could still be saved; and (3) prospects for forcing settlement.  In so doing the district court erred because none of those bear on the factors prescribed by the statute, and "[b]y codifying the exclusive set of factors that courts are to consider when granting stays, the [statute] precludes courts from inventing new factors," 157 Cong. Rec. S1364.

### 1.   Whether the District Court Can Decide the Same Issues Is Not Relevant

The primary ground for the district court's ruling appears to have been its apparent desire, and its uncontested jurisdictional competence, to decide validity itself:

> And we have the ability for the Court to address the issues that you would like to pursue before the board.
>
> I'm assuming that the Supreme Court would issue its opinion in *Alice versus CLS* at the end of the month. We have the ability to -- everyone would have the ability to review that opinion, assess it, determine how it affects the issues of obviousness and patentable subject matter, and then we can tee it up for a summary judgment motion on those issues.

A2470, A2473.  That misses the point.  The AIA does not divest district courts of jurisdiction, so of course they retain "the *ability*" to address issues presented to the PTAB.  The question is whether they *should*.

Because "the fundamental purpose" of the AIA's stay provision is "to provide a cost-efficient *alternative* to litigation," 157 CONG. REC. S1364, the lodestar for making that determination is efficiency, not jurisdictional competence.

Moreover, as pointed out above, the district court's ability to decide and settle issues is not as expansive as the PTAB's because the potential preclusive effect of the PTAB proceedings is greater. That is: an adjudication of *invalidity* by either the district court or the PTAB will put an end to both proceedings; a finding of *validity* by the PTAB will at least preclude DealerSocket from pursuing the same grounds decided by the PTAB in the district court; but a finding of validity by the district court will leave the PTAB proceedings unaffected. Thus, continued litigation of issues in the district court is more likely to require repetitive litigation of the same issues in separate fora.

### 2.   The District Court Improperly Prioritized Speed over Efficiency

The district court also insisted: "I can tee this case up and have all the issues that you'd like to take to the board litigated here sooner." A2470. The relative *speed* with which the district court might dispose of some issues now pending before the PTAB also is not a factor under

the AIA.  Staying civil actions pending the disposition of CBM petitions will almost always delay trial of the former.  With reference to the trifold aims articulated in FRCP 1—"the just, speedy, and inexpensive determination of every action"—a stay goes against "speedy."  But by enacting provisions intended to result in the imposition of a stay "unless there [is] an extraordinary and extremely rare set of circumstances," 157 CONG. REC. S1364—by "plac[ing] a very heavy thumb on the scale in favor of a stay being granted," 157 CONG. REC. S1363—Congress has prioritized "inexpensive" over "speedy," at least in this context.

Absent a stay, the district court might get to trial before the PTAB renders a final decision on any of DealerSocket's petitions.  But the cost will be at least an order of magnitude higher because unlike proceedings focused narrowly on identified invalidity grounds, trial in the district court will involve infringement and damages, as well, in addition to the other invalidity and enforceability defenses (such as inventorship and an on-sale bar) that are no part of the PTAB proceedings.

### 3. The Sunk Costs Considered by the District Court Are Not Part of the Statutory Calculus

The district court also explained: "one factor that I'm factoring in is all the time and effort I spent on this case so far." A2470. But the time and effort already expended is a sunk cost that cannot be recouped by either granting or denying a stay. Thus the district court's retrospective analysis is foreign to the AIA, which instead focuses on the time and effort that the district court would be spared *going forward* by a stay. *See also Textron*, 2007 WL 7772169 at *2 ("What is germane to whether judicial efficiency will be achieved is what work remains on the part of the court and the parties if the action proceeds . . .").

### 4. The AIA Did Not Authorize the District Court to Force Settlement by Denying a Stay

Finally, the district court offered a case management rationale for not staying:

> But the way to end the war is to hold the parties to the trial dates set by the Court. And that's the way cases resolve themselves is firm trial dates and discovery cutoff. And if I hold you to that, the parties hopefully will focus on trying to resolve this dispute, if you can. And if not, the case is litigated, and we move on to the next tribunal.

A2474. But the legislative intent behind the CBM statute is to provide "a relatively cheap alternative to civil litigation for *challenging* these patents, and . . . reduce the burden on the courts of dealing with the backwash of invalid business-method patents." 157 CONG. REC. S1367 (daily ed. Mar. 8, 2011) (Republican Policy Committee summary of the Manager's Amendment) (emphasis added). The district court's approach runs in entirely the opposite direction. Instead of facilitating relatively inexpensive administrative cleanup of the "backwash," as Congress intended, the district court followed a policy of forcing settlement by *driving up* litigation costs—which strengthens the patentee's hand and enhances its ability to extract a pretrial settlement that avoids any adjudication of validity—and thus *protects* "[p]atents of low quality and dubious validity," which "are a drag on innovation," *see* 157 Cong. Rec. S1363 (daily ed. Mar. 8, 2011) (statement of Sen. Leahy).

But the district court's reasoning does provide a credible explanation for AutoAlert's behavior. No candid observer can deny that the district court's preliminary injunction ruling, now fortified by *Alice*, places a substantial cloud over the validity of at least some of AutoAlert's patent claims. Given that, why does AutoAlert *not* allow

the PTAB proceedings to run their course, before making the substantial further investment that will be required to bring the district court proceedings to and through a jury trial?  Those proceedings will either confirm the apparent invalidity of AutoAlert's claims, at much lower cost; or vindicate them not only of the charge of lack of patentable subject matter, but also of the many other grounds put forward in DealerSocket's CBM petitions, again at a fraction of what that exoneration would cost in the district court.  The explanation of AutoAlert's conduct seems to be just what the district court contemplated: AutoAlert hopes to extract a settlement from DealerSocket, before any validity issues are actually decided, of at least what DealerSocket will otherwise have to pay to litigate not only the CBM grounds, but also damages, noninfringement, unenforceability, and additional invalidity theories, to judgment in the district court.

"By codifying the exclusive set of factors that courts are to consider when granting stays, the [statute] precludes courts from inventing new factors," 157 CONG. REC. S1364—such as promoting settlement by driving up litigation costs.

## X.    CONCLUSION

The four factors prescribed by AIA § 18 weigh in favor of a stay. Staying district court proceedings will serve the congressional policies behind that statute.  And a stay will conserve both judicial and private resources.  Thus this Court should vacate the district court's order denying DealerSocket's motion for stay, and remand with instruction to enter a new order granting that motion.

DATED:  July 14, 2014        By:   /s/ L. Rex Sears

Sterling A. Brennan
L. Rex Sears
MASCHOFF BRENNAN
20 Pacifica, Suite 1130
Irvine, CA 92618
Phone:  (949) 202-1900
Fax:  (949) 453-1104
Attorneys for Appellant
DEALERSOCKET, INC.

CASE PARTICIPANTS ONLY

# ADDENDUM

PUBLIC LAW 112–29—SEPT. 16, 2011

# LEAHY–SMITH AMERICA INVENTS ACT

(C) an analysis of the legal issues, if any, that arise from such virtual marking; and

(D) an analysis of the deficiencies, if any, of such virtual marking.

(b) FALSE MARKING.—

(1) CIVIL PENALTY.—Section 292(a) of title 35, United States, Code, is amended by adding at the end the following: "Only the United States may sue for the penalty authorized by this subsection.".

(2) CIVIL ACTION FOR DAMAGES.—Subsection (b) of section 292 of title 35, United States Code, is amended to read as follows:

"(b) A person who has suffered a competitive injury as a result of a violation of this section may file a civil action in a district court of the United States for recovery of damages adequate to compensate for the injury.".

(3) EXPIRED PATENTS.—Section 292 of title 35, United States Code, is amended by adding at the end the following:

"(c) The marking of a product, in a manner described in subsection (a), with matter relating to a patent that covered that product but has expired is not a violation of this section.".

(4) EFFECTIVE DATE.—The amendments made by this subsection shall apply to all cases, without exception, that are pending on, or commenced on or after, the date of the enactment of this Act.

Applicability.
35 USC 292 note.

### SEC. 17. ADVICE OF COUNSEL.

(a) IN GENERAL.—Chapter 29 of title 35, United States Code, is amended by adding at the end the following:

### "§ 298. Advice of counsel

"The failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent.".

(b) CONFORMING AMENDMENT.—The table of sections for chapter 29 of title 35, United States Code, is amended by adding at the end the following:

"298. Advice of counsel.".

### SEC. 18. TRANSITIONAL PROGRAM FOR COVERED BUSINESS METHOD PATENTS.

35 USC 321 note.

(a) TRANSITIONAL PROGRAM.—

(1) ESTABLISHMENT.—Not later than the date that is 1 year after the date of the enactment of this Act, the Director shall issue regulations establishing and implementing a transitional post-grant review proceeding for review of the validity of covered business method patents. The transitional proceeding implemented pursuant to this subsection shall be regarded as, and shall employ the standards and procedures of, a post-grant review under chapter 32 of title 35, United States Code, subject to the following:

Deadline.
Regulations.

(A) Section 321(c) of title 35, United States Code, and subsections (b), (e)(2), and (f) of section 325 of such title shall not apply to a transitional proceeding.

(B) A person may not file a petition for a transitional proceeding with respect to a covered business method patent unless the person or the person's real party in interest or privy has been sued for infringement of the patent or has been charged with infringement under that patent.

(C) A petitioner in a transitional proceeding who challenges the validity of 1 or more claims in a covered business method patent on a ground raised under section 102 or 103 of title 35, United States Code, as in effect on the day before the effective date set forth in section 3(n)(1), may support such ground only on the basis of—

(i) prior art that is described by section 102(a) of such title of such title (as in effect on the day before such effective date); or

(ii) prior art that—

(I) discloses the invention more than 1 year before the date of the application for patent in the United States; and

(II) would be described by section 102(a) of such title (as in effect on the day before the effective date set forth in section 3(n)(1)) if the disclosure had been made by another before the invention thereof by the applicant for patent.

(D) The petitioner in a transitional proceeding that results in a final written decision under section 328(a) of title 35, United States Code, with respect to a claim in a covered business method patent, or the petitioner's real party in interest, may not assert, either in a civil action arising in whole or in part under section 1338 of title 28, United States Code, or in a proceeding before the International Trade Commission under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337), that the claim is invalid on any ground that the petitioner raised during that transitional proceeding.

(E) The Director may institute a transitional proceeding only for a patent that is a covered business method patent.

(2) EFFECTIVE DATE.—The regulations issued under paragraph (1) shall take effect upon the expiration of the 1-year period beginning on the date of the enactment of this Act and shall apply to any covered business method patent issued before, on, or after that effective date, except that the regulations shall not apply to a patent described in section 6(f)(2)(A) of this Act during the period in which a petition for post-grant review of that patent would satisfy the requirements of section 321(c) of title 35, United States Code.

(3) SUNSET.—

(A) IN GENERAL.—This subsection, and the regulations issued under this subsection, are repealed effective upon the expiration of the 8-year period beginning on the date that the regulations issued under to paragraph (1) take effect.

(B) APPLICABILITY.—Notwithstanding subparagraph (A), this subsection and the regulations issued under this subsection shall continue to apply, after the date of the

repeal under subparagraph (A), to any petition for a transitional proceeding that is filed before the date of such repeal.

(b) REQUEST FOR STAY.—

(1) IN GENERAL.—If a party seeks a stay of a civil action alleging infringement of a patent under section 281 of title 35, United States Code, relating to a transitional proceeding for that patent, the court shall decide whether to enter a stay based on—

(A) whether a stay, or the denial thereof, will simplify the issues in question and streamline the trial;

(B) whether discovery is complete and whether a trial date has been set;

(C) whether a stay, or the denial thereof, would unduly prejudice the nonmoving party or present a clear tactical advantage for the moving party; and

(D) whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court.

(2) REVIEW.—A party may take an immediate interlocutory appeal from a district court's decision under paragraph (1). The United States Court of Appeals for the Federal Circuit shall review the district court's decision to ensure consistent application of established precedent, and such review may be de novo.

(c) ATM EXEMPTION FOR VENUE PURPOSES.—In an action for infringement under section 281 of title 35, United States Code, of a covered business method patent, an automated teller machine shall not be deemed to be a regular and established place of business for purposes of section 1400(b) of title 28, United States Code.

(d) DEFINITION.—

(1) IN GENERAL.—For purposes of this section, the term "covered business method patent" means a patent that claims a method or corresponding apparatus for performing data processing or other operations used in the practice, administration, or management of a financial product or service, except that the term does not include patents for technological inventions.

(2) REGULATIONS.—To assist in implementing the transitional proceeding authorized by this subsection, the Director shall issue regulations for determining whether a patent is for a technological invention.

(e) RULE OF CONSTRUCTION.—Nothing in this section shall be construed as amending or interpreting categories of patent-eligible subject matter set forth under section 101 of title 35, United States Code.

**SEC. 19. JURISDICTION AND PROCEDURAL MATTERS.**

(a) STATE COURT JURISDICTION.—Section 1338(a) of title 28, United States Code, is amended by striking the second sentence and inserting the following: "No State court shall have jurisdiction over any claim for relief arising under any Act of Congress relating to patents, plant variety protection, or copyrights. For purposes of this subsection, the term 'State' includes any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the United States Virgin Islands, American Samoa, Guam, and the Northern Mariana Islands.".

(b) COURT OF APPEALS FOR THE FEDERAL CIRCUIT.—Section 1295(a)(1) of title 28, United States Code, is amended to read as follows:

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV-13-00657-SJO (JPRx) | Date | June 2, 2014 |
|---|---|---|---|
| Title | AutoAlert Inc v. DealerSocket Inc | | |

| Present: The Honorable | S. JAMES OTERO, U.S. DISTRICT JUDGE |
|---|---|

| R. Neal for Victor Paul Cruz | Debbie Hino-Spaan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| David Jankowski | Lannie Sears |
| Craig Summers | Sterling Brennan |
| | Tyson Hottinger |

**Proceedings:**       MARKMAN HEARING

Matter called. At the direction of the Court and prior to the hearing, the parties identified the following terms for construction: "alert," "message," "batch process," "in real-time," "if it is determined," "configuration request," "current information," and "different respective time periods."

The Court confers with counsel and hears oral argument regarding the term "alert." Having considered the briefs in this case and the argument presented by counsel, the Court concludes that it will construe the term "alert" as a "communication calling for attention."

The Court confers with counsel and hears oral argument regarding the term "message."  Having considered the briefs in this case and the argument presented by counsel, the Court concludes that the canons regarding the dependent and independent claims, and that the canon regarding claim differentiation appear to support the construction that has been advanced by AutoAlert, and that it would, in reference to the term "message," adopt the proposed construction advanced by the plaintiff of "communication."

The Court confers with counsel and hears oral argument regarding the terms "batch process" and "in real-time." The Court reviews a demonstrative exhibit provided by defendant entitled "Specification Uses of Batch and Real-Time." The matters stand submitted.

During a short recess the Court reviews a recent Supreme Court ruling in *Nautilus, Inc. v. Biosig Instruments, Inc.* provided by defense counsel.

The Court confers with counsel and hears oral argument regarding the term "if it is determined." The Court reviews a demonstrative exhibit entitled "If" provided by defense counsel. Having

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV-13-00657-SJO (JPRx) | Date | June 2, 2014 |
|---|---|---|---|
| Title | AutoAlert Inc v. DealerSocket Inc | | |

considered the briefs in this case and the argument presented by counsel, the Court concludes that it would construe the term as a condition that is necessary, but not necessarily sufficient, for the performance of a step.

The Court confers with counsel and hears oral argument regarding the term "configuration request." The matter stands submitted.

The Court confers with counsel and hears oral argument regarding the terms "current information," and counsel submit on the briefs regarding the term "different respective time periods."

The claim construction matters stand submitted. An order will issue.

The Court hears oral argument regarding Defendant's Motion to Stay Case Pending CBM Review of the Asserted Patents [148] (Filed 5/19/2014). The Court considers the following factors: whether the stay will simplify the issues of the case; the stage of discovery and dates that are set; whether there is any prejudice to the non-moving party; and whether the stay will reduce the burden of litigation on the parties or the Court. Having considered the argument presented by counsel, as well as the preceding factors, the Court denies without prejudice Defendant's Motion to Stay Case pending the Supreme Court's decision in *Alice Corp. v. CLS Bank*. The Court also denies Defendant's oral motion to extend the discovery cut-off date.

| | 4 hrs | : | 27 mins |
|---|---|---|---|
| Initials of Preparer | RGN | | |

Case: 14-1560 Case: 14-1560 Document: 19 Page: 71 Filed: 07/14/2014
CASE-PARTICIPANTS ONLY Document: 18 Page: 71 Filed: 07/14/2014

1

<pre>
 1                UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3            HONORABLE S. JAMES OTERO, U.S. DISTRICT JUDGE

 4

 5   AUTOALERT, INC.,                )
                                     )
 6                  Plaintiff,       )
                                     )
 7        vs.                        )    Case No.
                                     )
 8   DEALERSOCKET, INC.,             )    SA CV 13-00657 SJO
                                     )    (JPRx)
 9                  Defendant.       )
     _____)

10

11

12

13                REPORTER'S TRANSCRIPT OF
                     MARKMAN HEARING
14                MONDAY, JUNE 2, 2014
                       10:10 A.M.
15                LOS ANGELES, CALIFORNIA

16

17

18

19

20

21

22   _____

23           DEBBIE HINO-SPAAN, CSR 7953, CRR
              FEDERAL OFFICIAL COURT REPORTER
24           312 NORTH SPRING STREET, ROOM 414
              LOS ANGELES, CALIFORNIA 90012
25                dhinospaan@yahoo.com
</pre>

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR THE PLAINTIFF:

 4            KNOBBE MARTENS OLSON and BEAR LLP
              BY:   DAVID G. JANKOWSKI, ESQ.
 5                  CRAIG S. SUMMERS, ESQ.
              2040 Main Street, 14th Floor
 6            Irvine, California 92614
              (949) 760-0404
 7

 8   FOR THE DEFENDANT:

 9            MASCHOFF BRENNAN
              BY:   STERLING ARTHUR BRENNAN, ESQ.
10                  TYSON K. HOTTINGER, ESQ.
              20 Pacifica, Suite 1130
11            Irvine, California 92618
              (949) 202-1900
12
              MASCHOFF BRENNAN
13            BY:   LANNIE REX SEARS, ESQ.
              201 South Main Street, Suite 600
14            Salt Lake City, Utah 84111
              (435) 252-1360
15

16

17

18

19

20

21

22

23

24

25
```

 1  don't think.

 2      MR. BRENNAN:  Well, it may be one of -- it's maybe

 3  one.  As I understand it, if it's the *Agility* case, an appeal

 4  was taken to the Federal Circuit, and the Federal Circuit

 5  issued a stay.  So yes, there are three outliers that we've

 6  been able to identify.

 7      And in the sole instance where an appeal was not taken and

 8  a stay was not granted, there was appeal made by statutory

 9  right to the Federal Circuit, and the Federal Circuit issued a

10  stay.

11      THE COURT:  So the other factor is prejudice to the

12  nonmoving party.  So in the order that the Court issued

13  regarding the preliminary injunction, the Court concluded that

14  the parties are direct competitors and that the plaintiff made

15  a sufficient showing that it would suffer irreparable harm if

16  the defendant was infringing.  So this appears to weigh in

17  favor of not granting the request.

18      MR. BRENNAN:  Well, what the Court also ordered, of

19  course, is deny the preliminary injunction finding that there

20  was not a likelihood of success for the plaintiff to even to

21  demonstrate patentable subject matter.  And that's one of the

22  very focused points of each of the petitions that have been

23  filed and those that will be.

24      So we have a situation here where this court has already

25  determined that the plaintiff has not shown a likelihood of

1  succeeding on the basis of patent eligibility.  That was the

2  ground that is, among others, that's been presented to PTAB,

3  and it will be able to make its determination.

4      So although the two parties are competitors, to simply

5  take in isolation that fact, but to not take into account what

6  findings have already been made by this court regarding the

7  likelihood of success would be --

8          THE COURT:  Let me ask you -- I'm sorry.  Feel free

9  to conclude.  I didn't mean to cut you off.

10         MR. BRENNAN:  No, I was going to say --

11         THE COURT:  Just in terms of bringing an end to the

12 litigation, at least in the first stage of litigation in

13 District Court, wouldn't it make sense to tee up the issues of

14 patentable subject matter obviousness and bring those matters

15 to this court having a motion for summary judgment?

16         MR. BRENNAN:  That could be done, Your Honor.  And

17 if a stay were not granted, that would be a mode.  But as we've

18 understood the Court's requirements, there's a limitation on a

19 single summary judgment motion.

20         THE COURT:  Yes.  But we can always adjust based on

21 the particulars of the case.

22         MR. BRENNAN:  It could be.  This court has been very

23 strict on page limitations.  Even on briefing the preliminary

24 injunctions we had to file an ex parte application just to get

25 25 pages.  We had issues that go well beyond the matters that

1  are placed before the PTAB for which we seek summary judgment.

2  So we'd be facing a situation --

3          THE COURT:  Well, shorter is always better.  And I'm

4  a believer that, again, you know, there's the old adage, I

5  would have written a shorter letter, but I didn't have the

6  time.

7          MR. BRENNAN:  That may well be.  But we have taken

8  efforts to do a thorough job, but as efficient a job as we

9  could just on the CBM petitions.  And I do agree with the

10 Court, that some of these matters could be put before the

11 District Court, but we also have a statutory right to go to

12 PTAB and present the issues there, and that's the right that

13 we've exercised.  And we've come to this court asking the Court

14 to apply the factors.  And given the clearly stated

15 congressional intent to favor stays and not to have parallel

16 proceedings except only in the most exceptional circumstances,

17 we believe we followed the prudent course of action and one

18 that would save resources to this court and litigation costs.

19         THE COURT:  Let's go through the factors.  Whether

20 the stay will simplify the issues, I'm not sure that the

21 litigation in this court will end assuming best-case scenario

22 for your client.  It may.

23         MR. BRENNAN:  If we prevail, every single claim

24 would be invalid.

25         THE COURT:  It may.

```
 1          The second factor is a trial date has been set.  The third
 2    factor is prejudice to the nonmoving party.  And in this
 3    particular case, there is a good claim if there's infringement
 4    and the patents are valid.  And we have the ability for the
 5    Court to address the issues that you would like to pursue
 6    before the board.
 7          MR. BRENNAN:  Well, Your Honor, a couple of
 8    responses.  First of all, we have taken guidance from this
 9    Court's rulings and this Court's decision on the Credit
10    Acceptance Corporation case.  Many items that you've mentioned
11    would apply here, but with greater force in favor of a stay
12    than the stay that the Court issued in the Credit Acceptance
13    Corp. case.  A trial date has been set.  Proceedings had gone.
14    In that case the Court observed --
15          THE COURT:  Every case is different.
16          MR. BRENNAN:  I understand that, Your Honor, but I'm
17    referring to precedent.
18          THE COURT:  No.  No.  Every case is different.  I'm
19    not going to be persuaded by that.  That's just not -- there's
20    a lot that's factored in in reference to particular stays in a
21    particular case.  And one factor that I'm factoring in is all
22    the time and effort I spent on this case so far.  I can tee
23    this case up and have all the issues that you'd like to take to
24    the board litigated here sooner.
25          MR. BRENNAN:  Well, Your Honor, the speed with which
```

```
 1   the most egregious exceptionality, and I'm suggesting to the

 2   Court that this case doesn't meet that standard.  We've not

 3   completed discovery.  We have so many issues that we otherwise

 4   would tend to the Court.

 5        We do have a concern, Your Honor, back to the issue about

 6   summary judgment.  Could we file a summary judgment motion that

 7   embraces the issues that are covered by the CBM petitions?

 8             THE COURT:  Yes.

 9             MR. BRENNAN:  The answer is "yes."  But there are

10   many, many other issues, Your Honor.  We have other invalidity

11   attacks that are not even part of the CBM petitions.

12             THE COURT:  I understand you would like to bring

13   additional issues before the Court, but we can parse this out

14   so that the -- so that the Court can address the issues of

15   patentable subject matter, obviousness, and whether the term

16   "may affect" is indefinite.  And then you'll have other

17   opportunities at another point in time to raise other issues.

18   So that's what I'm suggesting here.

19             MR. BRENNAN:  And I need -- one of the things that

20   we've been mindful when we were before the Court on the issue

21   of the preliminary injunction, the Court expressed grave

22   reservations about proceeding even with the trial unless or

23   until there was specific guidance on the pending CLS case.

24   Now, we all expect, I think, that there could be a ruling

25   issued soon, but as we understood the Court's ruling on the
```

1     preliminary injunction, the Court expressly stated at that

2     hearing that if there were not specific guidance, that this

3     court would not proceed with the trial.

4         THE COURT: But the guidance is going to come out at

5     the end of the month. The CLS case is going -- that's going to

6     issue -- the Supreme Court will issue its opinion.

7         MR. BRENNAN: Well, we all hope. And as the Court

8     expressed, it may put over to the next term. There's all sorts

9     of things that could happen.

10         THE COURT: Yes. I think I need that guidance,

11     also. But I'm looking at -- I'm assuming that the Supreme

12     Court would issue its opinion in *Alice versus CLS* at the end of

13     the month. We have the ability to -- everyone would have the

14     ability to review that opinion, assess it, determine how it

15     affects the issues of obviousness and patentable subject

16     matter, and then we can tee it up for a summary judgment motion

17     on those issues.

18         MR. BRENNAN: Here's the issue we have. It's a

19     practical one, but it does involve great expense to these

20     litigants. The parties have not completed discovery. There's

21     been only three depositions taken out of a potential 20. The

22     parties have not completed those, have not conducted them. If

23     a stay is not issued and there's parallel proceedings pending

24     before the PTAB, the parties would be required without a stay

25     to move forward with all that discovery. Much of it will go to

```
 1    issues that could prove to be completely unnecessary,

 2    completely irrelevant to the issue even of patentability.

 3         So if the Court either -- we request either grant the stay

 4    to avoid that enormous expenditure funds on those litigation

 5    activities, or if the Court's unwilling to grant a stay, to

 6    continue the discovery period so that we can put before the

 7    Court summary judgment motion materials that go to these issues

 8    before both sides are required to engage in this remaining

 9    thermonuclear warfare that is discovery.  We have that ahead of

10    us.  That's not been completed.

11              THE COURT:  But the way to end the war is to hold

12    the parties to the trial dates set by the Court.  And that's

13    the way cases resolve themselves is firm trial dates and

14    discovery cutoff.  And if I hold you to that, the parties

15    hopefully will focus on trying to resolve this dispute, if you

16    can.  And if not, the case is litigated, and we move on to the

17    next tribunal.

18              MR. BRENNAN:  I expect what will happen here, Your

19    Honor, is without a stay, we'll be left in a situation where

20    we've already filed three, and we'll file the remaining two

21    petitions.  There will be parallel proceedings.

22              THE COURT:  Yes.

23              MR. BRENNAN:  And it would likely require

24    DealerSocket to make a determination as to whether it needs to

25    seek immediate relief on the Federal Circuit on this, Your
```

1          THE COURT:  Look, I'm going to take the matter under

2    submission.

3          The easiest thing for me to do is to grant the stay

4    because it takes the case off my docket.  And it's not like I

5    have -- I have other matters to handle, 300 litigations.  So if

6    I decide to deny the stay, it's going to be based on the

7    factors that the Court must consider.  It would be easy for me

8    to grant the stay.  It would be less work, and I respect the

9    lawyers here.

10         I think you've done -- both sides have done a very good

11   job of representing your clients.  And I'm sure if these issues

12   are presented to me, there's going to be a lot of additional

13   work to do to gear up for that hearing.  But I think we need to

14   determine first if the Supreme Court is going to issue its

15   opinion in CLS at the end of the month.  So I think we have to

16   revisit this.

17         The request to stay the proceedings is denied without

18   prejudice.  And the next major event will be whether the

19   Supreme Court issues its opinion.

20         MR. SUMMERS:  That makes sense, Your Honor.  Thank

21   you very much.

22         MR. BRENNAN:  May I just make one request?

23         THE COURT:  Yes.

24         MR. BRENNAN:  I am focused on a measure of

25   practicalities here.  If as the Court hopes, and we hope as

 1  well, that the Supreme Court issues its decision before the end

 2  of the term, and we are going to potentially revisit this issue

 3  depending on what the Supreme Court does, we would appreciate

 4  at least a deferral of discovery for a -- a like manner of

 5  time, Your Honor.  So that if we're waiting for the Supreme

 6  Court, it will not -- it won't affect the trial date if the

 7  parties are afforded a roughly three-week period or so.

 8          THE COURT:  The request to continue discovery will

 9  be denied.

10      So we'll have to revisit this -- all of these issues at a

11  later point in time.  I think we've spent enough time, so thank

12  you very much.  The proceedings is ended.

13          MR. BRENNAN:  Thank you, Your Honor.

14          MR. SUMMERS:  Thank you, Your Honor.

15          THE COURTROOM DEPUTY:  All rise.  The Court is now

16  adjourned.

17          (Proceedings concluded at 1:20 p.m.)

18                        --oOo--

19

20

21

22

23

24

25

```
1                 CERTIFICATE OF OFFICIAL REPORTER

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the judicial conference of

13   the United States.

14

15   Date:  June 4, 2014

16

17

18

19                              /S/ DEBBIE HINO-SPAAN_

20                         Debbie Hino-Spaan, CSR No. 7953
                           Federal Official Court Reporter
21

22

23

24

25
```

# PROOF OF SERVICE

The undersigned certifies under penalty of perjury that on July
14, 2014, the foregoing Appellant's Opening Brief, including the
Addendum thereto, was electronically filed through the Court's ECF
system, for service on counsel of record for plaintiff-appellee AutoAlert,
Inc. as follows:

> Craig S. Summers, craig.summers@knobbe.com
> David G. Jankowski, david.jankowski@knobbe.com
> Cheryl T. Burgess, cheryl.burgess@knobbe.com
> KNOBBE, MARTENS, OLSON & BEAR
> 2040 Main Street, Fourteenth Floor
> Irvine, CA 92614

> /s/ *L. Rex Sears*

# CERTIFICATE OF COMPLIANCE

The undersigned certifies under penalty of perjury that the foregoing Appellant's Opening Brief has 11,177 words, including headings, footnotes, and quotations, but not including the cover sheet, corporate disclosure statement, table of contents and citations, signature block, addendum, proof of service, or this certificate of compliance.

/s/ *L. Rex Sears*